### RAYMER et ux. v. COMLEY LUMBER CO.

No. 22965. Nov. 27, 1934.

Ross Rizley and Orlando F. Sweet, for plaintiffs in error.

R. L. Howsley, for defendant in error.

PER CURIAM. This action was begun in the district court in and for Texas county, state of Oklahoma, on January 4, 1929, at which time Comley Lumber Company, a corporation, filed suit against Lizzie Raymer and R. H. Raymer, husband and wife, J. W. Raymer, Pittsburgh Mortgage & Investment Company, and American First Trust Company, as receiver for the F. D. Collins Investment Company, defendants.

The defendants, other than the Raymers, made default, and while they are not especially mentioned in the judgment, it attempts to bar their interest. Personal judgments were rendered against Lizzie Raymer and R. H. Raymer; verdict was directed in favor of J. W. Raymer; though the journal entry of the judgment does not discharge, nor award him his costs.

The plaintiffs in error here were defendants below, defendant in error was plaintiff below, and for convenience will be referred to as they appeared in the lower court.

In order to understand our holdings it will be necessary to analyze the petitions filed in this cause. The original petition alleged:

"That the defendant, J. W. Raymer, at all times hereinafter mentioned, was not now is the owner in fee simple of the following described tracts of land with all buildings thereon, situate in Texas county, Oklahoma, to wit: The S. ½ of N. E. ¼ and N. ½ of S. E. ¼ of sec. 15, twp. 3 N., range 14 E. of Cimarron Meridian.

"That the defendant, R. H. Raymer, acting as agent of the owner of said above-described premises and with full knowledge and consent of said owner of the above-described premises aforesaid, did secure from this plaintiff and plaintiff did furnish certain building materials for the purpose and which were used on the above-described premises in the building and making of various improvements thereon; the date upon which the material for said improvements were

last furnished by this plaintiff was September 17, 1927."

Petition then alleges the filing of "Notice of Materialman's Lien" in the proper office, Texas county, Okla., and the instrument so alleged to have been filed is attached to the petition, marked "Exhibit A" and made a part thereof.

As to the defendants Lizzie Raymer and R. H. Raymer, her husband, the pleader contents himself by saying:

"That the defendants, Lizzie Raymer and R. H. Raymer, her husband, claim some right, title, interest, lien or estate in and to the above-described tracts of land, but plaintiff alleges that any right that they or either of them may have or claim in, to, or upon the above-described tracts of land or either of them is subject and inferior to the right of this plaintiff."

He then prays judgment against J. W. Raymer for $1,465.60, with interest at 10 per cent. from January 12, 1928, and $250 attorney's fee.

Exhibit A, omitting the statement of account, was as follows:

"Guymon, Okla. Yard.
"Liens, Mechanics and Material Men, No. 1,
"Statement by Any Person Under Contract with the Owner, etc., for Labor or Material, etc.

"Name of Owner   J. W. Raymer

"Name of Contractor

"Name of Claimant   The Comley Lumber Company (a corporation)

"Said contractor and claimant claims a Lien upon the following described property, to wit: South half (1/2) of northeast quarter (1/4) and north half (1/2) of southeast quarter (1/4), section fifteen (15) township three (3), range fifteen (15), Texas county, state of Oklahoma; for that they did under contract with R. R. Shull and R. H. Raymer, father, acting as agents, owner of the property aforesaid furnish material for various improvements, barn, hen house, etc., in and upon said property.

"The amount claimed for said material is $1,465.60, fourteen hundred sixty-five and 60/100 dollars, and said materials and the items thereof, as nearly as practicable, are set forth in the bill of items hereto attached, made a part of this statement and marked 'Exhibit A.'

"That material was last furnished under said contract on the 17th day of September, 1927.

"That all of said material was used in the erection and construction of said above named improvements.

"The Comley Lumber Company,
"C. A. Comley, Secy.
"Claimant."

This was verified by the secretary of the lumber company. It will be observed that the only person against whom a money judgment was asked was J. W. Raymer. The only connection R. R. Shull and R. H. Raymer had with the transaction, under the petition and its controlling exhibits, was that of agent for J. W. Raymer. As for Lizzie Raymer and R. H. Raymer, we have seen that they were merely notified to declare what, if any, interest they had in the property; as were the defendants Pittsburgh Mortgage & Investment Company and American First Trust Company.

The pleadings remained in that condition for almost two years, that is, until December 9, 1930, at which time an amended petition was filed. J. W. Raymer is again named as owner of the lands, but a variance is apparent in this: The original petition alleges that R. H. Raymer and R. R. Shull acted as agents for the owner and with full knowledge and consent of the owner did secure from the plaintiff, etc., the building materials.

In the first amended petition. the allegation is:

'That the defendants did secure from this plaintiff, and the plaintiff did furnish said defendants with certain building materials for the purpose of and which materials were used on the above-described premises in the building and making of various improvements thereon. The date upon which the materials for said improvements was last furnished by plaintiff was on September 17, 1927."

However, the plaintiff alleges in this that the defendants Lizzie and R. H. Raymer claim some right, title, interest, etc., in the lands, but they were inferior to the rights of the plaintiff. The lien statement attached to the original petition is identical with the statement attached to the first amended petition. This exhibit, of course, controls and limits the allegations of the petition. See Forry v. Brophy, 116 Okla. 99, 243 P. 506.

The opinion in part is as follows:

"* * * For on the company's own pleading he was not made a party to the lien, as shown by the exhibit attached to the petition, neither was he made a party to the liens claimed by Brophy, and, under the

rule established by this court, exhibits attached to a pleading upon which remedy is based take precedence over any allegations in the pleading. This court, in the case of Mary A. Hyde v. City of Altus, 92 Okla. 170, 218 P. 1081, said:

" 'Where a written instrument is the foundation of a civil action, the original, or a copy thereof, should be filed as an exhibit to the pleading, and in case of variance between the pleading and the exhibit, the exhibit must control. The instrument is held to be a part of the complaint.'

"To the same effect are the cases of First National Bank of Arkansas City v. Jones, 2 Okla. 353, 37 P. 824; Long v. Shephard, 35 Okla. 492, 130 P. 131; Calman v. Kreipke, 40 Okla. 518, 139 P. 698; Dabney v. Hathaway, 51 Okla. 658, 152 P. 77; Friend v. Southern State Life Ins. Co., 58 Okla. 448, 160 P. 457.

"This being the state of the pleadings in this case, we are inclined to believe that the court could not and should not have rendered judgment against E. K. Forry foreclosing liens on his interest, when the exhibits show that such liens had no existence, as such judgment of foreclosure is outside and beyond the issues."

A judgment against either R. H. Raymer or Lizzie Raymer for any sum or for the foreclosure of any interest would have been outside the issues and a nullity.

Then, on the 19th of December, 1930, after answer had been filed to first amended petition, the plaintiff filed his second amended petition.

This petition recites "leave of court having been obtained." Though the record fails to disclose any application for leave, or any action of the court concerning it, it was nevertheless acted upon by all parties.

There is nowhere any showing that plaintiff had been prevented from acquiring knowledge of the true state of facts by reason of any fraud or concealment on the part of the defendants, or either of them, or any mistake made in good faith by plaintiff or its counsel. This court has said in Lane Implement Co. v. Lowder & Manning, 11 Okla. 61 (loc. cit. 62) 65 P. 926:

"The original answer admitted the commencement of the original suit, the issuance of the order of attachment, and the seizure of the property thereunder; the execution and delivery of the forthcoming bond, and the return of the property to Lowder, and, finally, admitted the rendition and existence of judgment in such case as pleaded by the plaintiff; and that the attached property had been ordered sold. It is not clear to the court from the record whether the defendants intended to abandon their original answer or not, but no matter what their intentions were, they are bound by the solemn admissions made in their original answer, in the absence of mistake, which is not claimed; and when the plaintiff filed a demurrer to the defendants' amended answer, it was the duty of the trial court, under the conditions of the record, to take those admissions into consideration, and if the admissions of the defendants are true (and we must conclude that they are), then the answer, taking it as a whole, fails to state any defense to the plaintiff's petition. Solemn admissions made by a party to an action, in his pleading, should be regarded as admitted facts in the case, until there is a showing that they were made by mistake, either on the part of the pleader or his attorney."

This case has been cited with approval in Rogers v. Brown, 15 Okla. 527, 86 P. 443; Page v. Geiser Mfg. Co., 17 Okla. 113, 87 P. 851.

In this second amended petition, filed three years and more than three months after the last item of lumber had been procured, plaintiff alleges:

"That the defendant, Lizzie Raymer, at all times hereinafter mentioned was and now is the owner in fee simple of the following described tracts of land with all buildings thereon, situated in Texas county, Okla., to wit."

Following that is a description of the same lands, and after that description appears the same vague allegation as to the transaction, as follows:

"That the defendants did secure from this plaintiff, and the plaintiff did furnish said defendants with certain building materials for the purpose of and which materials were used on the above-described premises in the building and making of various improvements thereon. The date upon which the materials for said improvements was last furnished by plaintiff was on September 17, 1927."

The allegation that the plaintiff, "under contract to the owners, * * * did furnish material" required by statute is noticeably absent in the amended petition. Whitfield v. Frensley Bros. Lbr. Co., 141 Okla. 44, 283 P. 985.

This petition, of course, is to be interpreted by its controlling exhibits. Exhibit B (omitting the verifications) is as follows:

"Statement by any person under contract with the owner, etc., for labor or material, etc.

"Name of Owners Lizzie Raymer, R. H. Raymer, J. W. Raymer.

"Name of Contractor

"Name of Claimant    The Comley Lumber Co. (a corporation)

"Said contractor and claimant claims a lien upon the following described property, to wit:

"South half (1/2) of northeast quarter (1/4) and north half (1/2) of southeast quarter (1/4) section fifteen (15) township three, range fifteen (15) Texas county, Oklahoma, for that they did under contract with R. R. Shull and R. H. Raymer, acting as agents, owners of the property aforesaid, furnish material for various improvements, barn, henhouse, etc., in and upon said property.

"The amount claimed for material is fourteen hundred sixty-five and 60/100 ($1,465.-60) dollars, and said material and the items thereof, as nearly as practicable, are set forth in the bill of items hereto attached, made a part of this statement and marked Exhibit 'A'.

"The material was last furnished under said contract on the 17th day of September, 1927.

"That all of said material was used in the erection and construction of said above-named improvements.

"The Comley Lumber Company,

"R. C. Yarberry,

"Manager.    Claimant."

Exhibit "A" is the original materialman's lien. The second amended petition states that exhibit "A" was filed on January 12, 1928. Upon the face of this petition it is apparent that for the first time in more than three years Lizzie Raymer and R. H. Raymer were charged with personal liability. It is to be borne in mind that in spite of the allegation of the petition that "leave of the court had been obtained" to file the amended lien statement and amended petition, nothing appears in the record to substantiate this. Neither application to the court nor order of the court is in the record.

Examination of the evidence will show that every fact of which the witnesses of the plaintiff had knowledge had been acquired by such witnesses practically four years prior to filing of the second amended petition. One of two things is patent: Either that the sworn statement filed by plaintiff on January 12, 1928, almost three years prior to the date of the amended petition was knowingly false, or the statement filed on the 19th of December, 1930, by which they seek to charge Lizzie Raymer and R. H.

Raymer as joint debtors with J. W. Raymer is not true.

It is equally patent that plaintiff waited until after the statute of limitation would have barred action upon the open account to file the amended petition, and that it was the first time that claim of liability had been made upon Lizzie Raymer and R. H. Raymer. To this petition both Lizzie Raymer and R. H. Raymer filed general demurrers. This was sufficient to raise the statute of limitation.

"Where a petition on its face shows that the cause of action set out therein is barred by the statute of limitations, it is error not to sustain a general demurrer to such petition, or to overrule an objection to the introduction of any evidence under such petition." Martin v. Gassert, 40 Okla. 608, 139 P. 1141; M., K. & T. R. Co. v. Wilcox, 32 Okla. 51, 121 P. 656.

The demurrers were overruled and exceptions saved. This action of the court is alleged as error by Lizzie and R. H. Raymer.

The case was called to trial on the 20th day of April, 1931. The plaintiffs in error objected to the introduction of any evidence when the first witness was offered. This was overruled and exceptions saved. Evidence was heard, and at its close each of the defendants moved for an instructed verdict in their behalf. These several motions were by the court overruled. Exceptions were saved. Thereupon the court instructed the jury. To the giving of several instructions exceptions were saved by the appealing defendants, after which the jury rendered the following verdict against the defendant Lizzie Raymer:

"We, the jury impaneled and sworn in the above-entitled cause, do upon our oath find for the plaintiff and fix the amount of its recovery at $1,465.60 at 10% from Jan. 12/28 against Lizzie Raymer and attorney fee of $250.

"Wm. Finley, Foreman."

It will be noticed that the jury, against the instructions of the court, awarded interest at the rate of 10% per annum; and, without either evidence or instruction, awarded the plaintiff $250 attorneys' fee.

In due time motion for new trial was filed, overruled, and exceptions were saved by the appealing defendants, and the case is now properly before this court.

Defendants, in their petition in error, assign several grounds for reversal, but they may each be considered under two heads.

First. The error of the court in overruling the defendants' demurrers to petition, as well as the refusal to instruct a verdict for these defendants, and the giving of instructions will be considered together.

We must bear in mind that the primary purpose of this action was to establish a debt, and that until a debt is established there can be no lien for the debt. See Hedlund v. Brogan, 167 Okla. 393, 30 P. (2d) 164, and cases there cited.

Our statute on amendments, which has been by this court held equally applicable to materialman's liens, is as follows (section 251, O. S. 1931):

"The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party or correcting a mistake in the name of a party, or mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; and when any proceeding fails to conform, in any respect, to the provisions of this Code, the court may permit the same to be made conformable thereto by amendment."

In giving just weight to that portion of the statute reading, "when such amendment does not change substantially the claim or defense," did the court err in overruling the demurrer?

As we have before noted, the charge against the appealing parties, until the filing of the second amended petition, was directory. It notified them to set up any claim they had in the lands and have it adjudicated. No recovery was asked against them, no charge was directed to them. Failure to plead, or filing a disclaimer, would have resulted merely in barring them from any right in the premises; but with the filing of the second amended petition, they are required to defend an action in debt; and plaintiff demands of them more than $1,700.

As we have before observed, the record contains no showing that the delay was occasioned by any act of the defendants. If plaintiff's testimony is true, it acted with full knowledge of the facts, and the delay in filing the petition against these defendants rests squarely on its own shoulders. In discussing this provision, this court has said in Avery v. Jayhawker Gasoline Co., 101 Okla. 286, 225 P. 544.

"While the allowance or disallowance of amendments under this provision rests largely within the discretion of the trial court, that discretion must be exercised within the bounds of statutory authority. Such amendments must be in furtherance of justice, and can only be allowed if they do not change substantially the claim or defense, if such amendments are not in furtherance of justice, or if they change substantially the claim or defense, their allowance constitutes reversible error. Leavenworth, Lawrence & Galveston R. R. Co. v. Van Riper, 19 Kan. 317. See, also, Haight v. Schuck, 6 Kan. 192; Alvey v. Wilson, 9 Kan. 401; St. Louis & S. F. Ry. Co. v. McReynolds, 24 Kan. 368; Kansas City, L. & S. Ry. Co. v. Richolson, 31 Kan. 28. The amendment allowed in this case changed substantially the claim of plaintiff. It permitted a recovery of damages in the sum of $11,000, for which no claim was made in the original petition and of which claim the defendant had no notice."

In Hoffman v. Webb, 113 Okla. 150, 240 P. 104, the court said:

"Although trial courts are vested with considerable discretion, and this court is very liberal in the matter of allowing amendments to pleadings, yet we cannot agree with the contention of counsel for the defendant in error that the amendment asked for is such as was contemplated by the statutes. In our opinion, it would not only change substantially the claim or defense of the defendant, but new issues would be created which were not presented in the trial court. Such an amendment would not be in furtherance of justice, but, on the contrary, would prevent the plaintiff from making any defense to the charge of the defendant that he had unlawfully converted said property."

And in Combs v. Gough, 147 Okla. 40, 294 P. 165, the court said:

"* * * While section 318, C. O. S. 1921, provides that the court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading to conform to the facts proven, when such amendment does not change substantially the claim or defense (Clem Oil Co. v. Oliver, 106 Okla. 22, 232 P. 942; Midland Valley R. Co. v. Rippe, 61 Okla. 314, 161 P. 233), but such statutes do not authorize an amendment which substantially changes the claim or defense. In the body of the opinion, in the case of Jones v. Exc. Nat. Bank, 124 Okla. 5, 253 P. 49, it is said:

"'While our Code is liberal in amendments and this court is liberal in construing amendments, and a broad discretion is lodged with the trial court in such matters, it has always been held reversible error to permit an

amendment which changes substantially the claim or defense.'

"And in the syllabus of this case, it is said:

"'It is reversible error to permit, after the evidence is in, an amendment to plaintiff's petition so as to change substantially his claim and the defense thereto.'

"'Causes of action in tort may be joined in separate counts in the same petition with causes of action in contract, when they all arise out of the same transaction or transactions connected with the same subject of action, and affect all the parties to the action.' Aylesbury Mercantile Co. v. Fitch, 22 Okla. 475, 99 P. 1089.

"Apparently the plaintiff below commenced his action and tried the same upon the theory that the defendants Collier and Combs were partners in the construction of the airplane on which plaintiff's material was used, and that they were liable as partners for such material even though the same was purchased by or furnished at the request of the defendant, Combs, and the action was predicated upon contract and foreclosure of statutory lien, while the amendment and directed verdict against the defendant, Combs, was apparently based on a tort arising under the theory that such defendant converted and disposed of the property involved after knowledge of the lien. We are of the opinion that the amendment made a material and substantial change in plaintiff's claim and the defense thereto, and was not such an amendment as was authorized under the record and statutes, and hold that it was reversible error to permit the same and direct a verdict thereunder."

We must bear in mind that the statute of limitation is a rule of property. A party having once been relieved by virtue of the statute, the defense becomes a vested right and cannot be taken from him without his consent.

In Ross v. Duval, 13 Pet. 45, 10 L. Ed. 51, it is said:

"The act provides, that after the lapse of ten years from the rendition of a judgment, where no execution has been issued, neither an action of debt nor a scire facias shall be brought on it. And that where an execution has been issued and not returned, other executions and proceedings may be had within ten years; but not afterwards.

"If this, then, be a limitation of law, it is a rule of property; and under the 34th section of the Judiciary Act, is a rule of decision for the courts of the United States.

"As an act of limitation, it is impossible to distinguish this from other acts, which limit the time of bringing certain actions,

either by designation of the ground or the form of the action."

In General Electric Co. v. Hurd, 171 Fed. 984, the court said:

"This is a limitation and not a process statute. When there is want of the issuance of an execution within ten years, the judgment becomes not only dormant, but dead. No execution can thereafter issue, and no action can be maintained upon the judgment, because it is conclusively presumed to have been paid. By section 721 of the Revised Statutes (U. S. Comp. St. 1901, p. 581), the laws of the several states are to be regarded as rules of decision in the trials at common law, in courts of the United States, in cases where they apply. This is the purport of section 34 of the original Judiciary Act of September 24, 1789 (Act. Sept. 24, 1789, c. 20, 1 Stat. 92). Under this law section 241 of the Oregon statutes becomes a rule of property and it precludes complainants' right of suit for the enforcement of its decrees under any contingency."

In Ryder v. Wilson's Ex'rs, 41 N. J. L. 11, which was a suit on a promissory note, Chief Justice Beasley said:

"The decisions of the courts, so far as my research has extended, are wholly in accord on this subject, and, with one voice, they declare that, when a right of action has become barred under existing laws, the right to rely upon the statutory defense is a vested right that cannot be rescinded or disturbed by subsequent legislation."

In Davis v. Minor, 2 Miss. (1 How.) 189, which was an action on contract, Chief Justice Sharkey says:

"A bar created by the statute of limitations is as effectual as a payment; and a defendant cannot be deprived of the benefit of such payment, nor of the evidence to support it; and, having provided himself with evidence sufficient and legal at the time of payment, no law can change the nature or destroy the sufficiency of the evidence."

Judge Cooley, discussing this subject, says:

"Regarding the circumstances under which a man may be said to have a vested right to a defense against a demand made by another, it is somewhat difficult to lay down a comprehensive rule which the authorities will justify. It is certain that he who has satisfied a demand cannot have it revived against him, and he who has become released from a demand by the operation of the statute of limitations is equally protected. In both cases the demand is gone, and to restore it would be to create a new contract for the parties—a thing beyond the power of the Legislature." Cooley's Const. Lim. (3d Ed.) 429 (460).

Section 108, O. S. 1931, is as follows:

"When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense, except as otherwise provided with reference to a counterclaim or set-off."

We conclude, therefore, that the amended petition was in fact the commencement of a cause of action against Lizzie Raymer and R. H. Raymer; that it appeared upon the face of the petition that the cause of action was barred; and that the court below erred in not sustaining the demurrer of the defendants.

Second. Considering briefly the evidence in the cause, it is wholly insufficient in two features to sustain any charge against Lizzie Raymer.

(a) Giving every possible intendment to the evidence of plaintiff, there is nothing that by remotest implication indicates that either Shull or R. H. Raymer were acting in her behalf, or with her knowledge or consent in any of the transactions that resulted in obtaining the lumber.

(b) There is no competent evidence that Lizzie Raymer was the owner of the land at the time the lumber was furnished; on the contrary, the testimony is direct that the property belonged to J. W. Raymer at the time the transaction was had, and in whose behalf a verdict was directed. On examination by the plaintiff of witness, R. H. Raymer, the following testimony was given:

"A. * * * The land was deeded to the wife when we first went out by Foreman. Q. Who? A. Frank B. Foreman. Q. When did she deed it to J. W.? A. Sometime in '25, I believe it was."

The only attempt to overcome this evidence was by an attorney for the plaintiff, who testified that in the early part of 1927, Mr. and Mrs. Raymer came to his office to see him about some business; that they requested him to draw two deeds. To the introduction of this evidence an objection was made on the grounds that any communication between the plaintiff's attorney and the defendants in the case was privileged. This was overruled, and the defendants excepted. Hereupon the following occurred:

"By Mr. Hughes: Q. What land did those two deeds cover? A. It covered—they said the two tracts northeast of town. That is the words they used. The two tracts northeast of town. Q. Did you prepare the deeds? A. I did. Q. What did you do with them?

A. I got in the automobile with R. H. Raymer and Lizzie Raymer and went to the residence of J. W. Raymer, living at that time in the house right due north of where John Claycomb has his filling station now, and went in and J. W. Raymer and his wife signed those deeds and I took their acknowledgment and handed them to Lizzie Raymer. (You may cross-examine.) By Mr. Rizley: Now, we move that all of this be stricken as a transaction between attorney and client and therefore incompetent, irrelevant, and immaterial and privileged."

This objection was overruled. In this there was error. Section 272, O. S. 1931, provides as follows:

"The following persons shall be incompetent to testify: * * *

"Fourth. An attorney, concerning any communication made to him by his client, in that relation, or his advice thereon, without the client's consent."

See Ratzlaff v. State, 122 Okla. 263, 249 P. 934. In Evans v. State, 5 Okla. Cr. 643, 115 Pac. 809, the court said:

"Communications made to an attorney in connection with or in the course of professional employment are under the seal of confidence and entitled to protection as privileged communications, even though the services are gratuitous. The statute is for the benefit of the client, not the attorney, and such communications are permanently protected from disclosure, except where the client waives the protection."

And further on quotes with approval:

"Wigmore on Ev. 2303, 2304, Mr. Greenleaf says: 'This protection extends to every communication which the client makes to his legal adviser, for the purpose of professional advice or aid, upon the subject of his rights and liabilities. The great objects of the rule seems plainly to require that the entire professional intercourse between client and attorney, whatever it may have consisted in, should be protected by profound secrecy.' 1 Greenleaf on Ev. 240."

And were this objection not good, yet the testimony should not have been allowed. There was no premise laid for the use of secondary evidence, no notice upon the defendants to produce documents (O. S. '31, sec. 317); plaintiff made no showing that deeds he referred to were not matters of record in the county clerk's office, and no evidence of any kind indicating any effort to produce the primary evidence appears in the case.

This cause is of equitable cognizance and this court will dispose of it as the undisputed facts require.

Let the cause be reversed and remanded to the district court of Texas county, and it is hereby directed to enter judgment in favor of the defendants below, plaintiffs in error here.

The Supreme Court acknowledges the aid of Attorneys Guy L. Andrews, Frank D. McSherry, and Clark Nichols in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Andrews and approved by Mr. McSherry and Mr. Nichols, the cause was assigned to a Justice of this court for examinaiotn and report to the court. Thereafter, upon consideration by a majority of the court, this opinion, as modified, was adopted.